[No. 6496.]

COUNTY COURT OF DENVER ET AL. V. WATSON, ADMINISTRATOR, ET AL.

1. INHERITANCE TAX—*Appointment of Appraisers*—Under Rev. Stat. sec. 5561, where one appointed to appraise the estate of a decedent, in order to determine the inheritance tax, has made an incomplete and unsatisfactory report, the county court has jurisdiction to remove such appraiser and appoint another in his stead, because otherwise the first appointee by returning inadequate reports might frustrate or interminably delay the proceedings. The question is for that court and its action is not a ground of complaint by the heirs or administrator of the decedent—(408, 409).

2. CERTIORARI—*When the Writ Lies*—The appraiser of an intestate's estate, under the inheritance tax law, made an unsatisfactory report. The county court of its own motion vacated the appointment of such appraiser and appointed another.

*Certiorari* from the district court, upon petition of the administrator and heirs, to review the last appointment should be quashed on motion—(412).

*Error to Denver District Court*—HON. GEORGE W. ALLEN, Judge.

HON. WILLIAM H. DICKSON, attorney general, Mr. S. H. THOMPSON, JR., assistant attorney general, Hon. JOHN T. BARNETT, attorney general and Mr. JAMES H. TELLER, assistant attorney general, for plaintiffs in error.

Mr. JAMES H. PERSHING and Mr. CHARLES H. WATERMAN for defendants in error.

Mr. JUSTICE HILL delivered the opinion of the court.

On the 11th day of June, 1907, upon the petition of Â·William S. Watson, administrator of the estate of Walter S. Cheesman, deceased, the Honorable Moses Hallett was appointed appraiser by order of the County Court of the City and County of Denver, to appraise and fix the value of the property of which Mr. Cheesman died seized and possessed, pursuant to General Section 5561, Revised Statutes, 1908, concerning inheritance taxes. In said order the appraiser was commanded to make a report in writing of the value of said estate and such other facts in relation thereto as the court might order or require. He appears to have been furnished the necessary blanks which also called for certain other information pertaining thereto. On August 10th, 1907, the appraiser filed an incomplete report of his findings in regard to said estate.

Before any action was taken thereon, the Attorney General filed his amended petition to set aside the report of said appraiser and asked that the appraiser be required to file a new report, alleging that the original was incomplete, insufficient, and not in compliance with the law; that it failed to show whether any property was transferred in contemplation of the death; that it failed to show whether there were any deductions to be made for the purpose of finding and ascertaining the net value of the various estates left by the deceased to his heirs; that the value of several of the parcels of real property were unreasonably low; and numerous other objections to the insufficiency, incompleteness and ambiguity of the appraiser's report. The administrator and the heirs filed a demurrer to this petition; at the same time they filed a petition of their won, asking that the county court forthwith fix the inheritance tax upon the report of the appraiser. The court overruled the demurrer of the administrator

and heirs, and also denied their petition, as well as that of the Attorney General, and, upon his own motion, vacated the order appointing Judge Hallett as such appraiser, on the ground that his report was insufficient and not in compliance with the law, and that the court could not determine therefrom the amount of the inheritance tax to be fixed against said estate. The court further ordered that Frederick J. Chamberlin be appointed the appraiser in said matter. Counsel for the administrator and heirs then gave notice of an appeal from said order. The appeal was denied on the ground that the order entered was interlocutory, in no way final and therefore not appealable.

Counsel for the administrator and the heirs then went before the district court, upon their behalf and not for the appraiser, and made application for a writ of *certiorari* directed to the county court alleging that it had exceeded its jurisdiction in removing Judge Hallett as appraiser and in the appointment of another, and that there was no appeal from said order and no plain, speedy or adequate remedy at law. The district court made a rule to show cause upon the county court and the judge thereof. The county court and its judge in response thereto filed a motion to set aside the rule to show cause for the reasons: First, that the district court did not have jurisdiction to review the order of the county court. Second, that the distictr court had no jurisdiction of the subject-matter set forth in the petition, and for the further reason that no proper party was applying for the writ of *certiorari* prayed for by the administrator and heirs. This motion was denied. Thereupon, the county court and the judge thereof filed a demurrer alleging lack of jurisdiction; that the parties applying had no beneficial interest; that all questions could be heard on appeal; that petitioners had a plain, speedy and adequate remedy at law; that the order was interlocutory

and not final; that there was a misjoinder of parties. The demurrer was overruled; the writ issued; the respondent made answer composed of the transcript of the record in the county court and other matters. The petitioners filed a motion to strike that part of respondent's return not included in the transcript of record from the county court; the same was granted and judgment was entered in accordance with the prayer of the petition. The respondent, through the Attorney General, brings the case .here for review upon error.

Eliminating the questions of the proper parties being before the district court, or that the application was prematurely made, or that the petitioners had an adequate remedy at law, or any of the many other questions raised which challenge the right of the district court to issue the writ, we are of opinion that the county court was acting within its jurisdiction in the appointment of the second appraiser and that the writ of *certiorari* should have been quashed for that reason alone.

Conceding that the inheritance tax statute confers aspecial jurisdiction upon the county court and that otherwise it has no general powers or jurisdiction in such proceedings, yet we can not agree, as contended for, that the county court was without jurisdiction to appoint a second appraiser.

Section 5561, Revised Statutes, 1908, in part reads:

"In order to fix the value of property of persons whose estate shall be subject to the payment of said tax, the county judge, on the application of any persons interested in the estate, including the state, or upon his own motion, shall appoint some competent person as appraiser as often as, or whenever occasion may require, whose duty it shall be," etc.

By this language, taking into consideration what was sought to be accomplished, the appointment of the second appraiser was a question for the county court to determine; if, in his judgment, the occasion had arisen when he should appoint another appraiser, that was a question for him to determine, and, under the circumstances shown, we do not think it was subject to complaint upon behalf of the administrator or heirs of the estate. If this language "as often as, or whenever occasion may require," is not susceptible of this construction, then we are unable to understand what it is there for. It will be observed that the report of the appraiser is simply advisory to the court whose duty it is, ultimately, to fix the value of the property and the tax to which the same is liable, etc., and it is from these matters, when so fixed, that the party aggrieved has the right to an appeal. In this action the findings of the county court are to the effect that the report so returned by the appraiser was insufficient, not in compliance with the law, and that the court could not therefrom determine the amount of the inheritance tax to be fixed against said estate. From which finding, as we view it, the trial court was then of the opinion that upon account thereof the occasion had arisen when it was necessary that he should appoint another person as appraiser, and we think the language used "as often as, or whenever occasion may require," when this entire act is considered gives to the county court (in the exercise of a sound discretion) this power; otherwise, the first appointee could block the entire course of procedure, not necessarily by refusing to report at all, but by returning such reports as would not give to the court the necessary information, or in returning inadequate reports, or such as would show upon their face a lack of good faith in the performance of such duties, or in many other ways where it could not consistently be contended that the

court was not possessed with the power to appoint another. And, while it is true the authorities hold that this act provides a special method to determine and fix the amount of the inheritance tax, and to this extent confers a special jurisdiction upon the county court, yet they do not go to the extent of holding that these acts are to be given such a literal construction as would defeat the ends sought to be accomplished. For instance, in *Matter of O'Donohue*, 44 App. Div., N. Y. 186, under a somewhat similar act where the statute provided that the appraiser should be appointed upon petition, it was held that the jurisdiction of the surrogate to appoint an appraiser is one that may be exercised with or without a petition and of his own motion wherever, in the sound exercise of his discretion, he deems it proper to do so, regardless of the language of the statute which states it shall be done upon petition, etc., in which case the court said that a tax is not imposed by the appointment of an appraiser nor even by the surrogate, that the tax in reality is imposed by the act itself.

The facts in the cases relied upon by the plaintiffs in error under somewhat similar statutes are entirely different from those here. For instance, in In Re Estate of Joseph J. Lawrence, 96 App. Div., N. Y. 29, the report of the appraiser had been received and confirmed by the surrogate court, from which no appeal had been taken. Over four years thereafter another appraiser was appointed to ascertain and fix the tax on such estate. About three years thereafter he made a report which the opinion states, "It does not appear that any order was ever made confirming this report." About two months thereafter another appraiser was appointed for the same purpose; two years thereafter he made a report in which he found certain property was subject to tax. In this case it was held that the report made by the first appraiser (which was con-

firmed by an order of the surrogate court from which no appeal was taken), precludes subsequent action to determine and fix the transfer tax until the happening of one of the other of the events specified (which terminates such trust estates), and, as the situation was precisely what it was when the first order of approval was made, it was, in effect, a final determination of the subject and effectually binding (there being no change in the estate) upon the comptroller and executor so long as it remained in force; that the order was not appealed from and could not be avoided by instituting a new proceeding.

In the case of the *Estate of Wm. B. Moneypenny*, 181 Pa. St. 309, an appraiser was appointed in the year 1884 and the inheritance tax on personal property assessed and paid; no appeal was taken. Nearly twelve years afterwards a new appraiser was appointed and made an appraisement of the proceeds of real estate in the city of New York, which it appears had been sold by the executors under the directions of the will upon the expiration of certain life estates. The ground of this second appraisement was that the New York land had been converted into personalty by the testator's directions to sell, and that the first appraiser had omitted it. It was held that this could not be done; that the plain statutory remedy for such a case is not a second appraisement, but an appeal from the first, and that when this is not done, the commonwealth can not come in many years thereafter and secure a new or additional appraisement in order to recover additional tax.

Thus it will be observed that this line of cases is not in harmony with the facts here where it is shown that the court had not yet made an appraisement but stated his inability to do so from the report of this appraiser. It is the appraisement itself, and the tax, when fixed, that the administrator and heirs are interested

in, and not in the personnel of the appraiser who makes his report to the court for the benefit of the court as provided for by the act.   For aught that appears from this record, the report of the second appraiser as to valuations might be less than that of the first upon the properties which the first appraiser attempted to value, and those interested might be benefited thereby.   In any event, the court was entitled to have a report of sufficient fullness, covering such facts as required by the statute, as well as the other information desired and called for, upon which, in his judgment, he could act intelligently.

For the reasons stated the judgment is reversed and the cause remanded with instructions to the district court to quash the writ and dismiss the action.

*Reversed with instructions.*

Decision *en banc.*

Mr. JUSTICE GABBERT dissents.

CHIEF JUSTICE CAMPBELL not participating.

Mr. JUSTICE GABBERT dissenting:

The statute involved provides:   "In order to fix the value of property of persons whose estate shall be subject to the payment of said tax, the county judge, on the application of any persons interested in the estate, including the state, or upon its own motion, shall appoint some competent person as appraiser as often as, or whenever occasion may require,   *   *   *."

It then provides that the appraiser so appointed shall appraise the property of the estate at its fair market value, and that from this report, and the data which the appraiser is authorized to collect and submit, and such other facts regarding the estate as the county court may direct to be filed, the county court shall make an order and fix the cash value of the estate, and

the tax to which the same is liable. It further provides that "Any person or persons dissatisfied with the appraisement or assessment may appeal therefrom to the district court of the proper county, within sixty days after making or filing of such appraisement or assessment, on giving good and sufficient security to the satisfaction of the county judge to pay all costs, together with whatever tax shall be fixed by the county court."

It thus appears that the statute provides a special method to determine and fix the amount of the inheritance tax to be assessed against an estate. To this end, a special jurisdiction is conferred upon the county court. It has no general powers or jurisdiction in such proceedings. The only authority it can exercise is to be found in the statute itself, and if it goes beyond the authority thus conferred, it exceeds its jurisdiction.— *In re Smith,* 40 N. Y. (App. Div.) 480; *In re Crerar,* 56 N. Y. (App. Div.) 479; *Estate of Moneypenny,* 181 Pa. St. 309; *Belcher's Estate,* 12 Pa. Dist. Rep. 774.

By the statute in question, an appraiser is to be appointed whose duty it is to make a report fixing the value of the property upon which the tax is to be imposed. From this report the county court determines the cash value of the estate and fixes the amount of the tax for which it is liable. Interested parties dissatisfied with the appraisement or assessment may appeal therefrom to the district court. In the case at bar the report was filed. It was attacked by a petition upon grounds to the effect that it was incomplete and insufficient, and not in compliance with the law in particulars specified; that the valuations fixed were unreasonably low; that personal property of great value had been omitted, and that it was unintelligible, ambiguous and uncertain. To support this petition, leave was asked to introduce testimony before the appraiser at a time to be fixed for that purpose. The statute does not provide for such procedure. The remedy of

the petitioner as prescribed by the statute if dissatisfied with the appraisement because of the alleged omissions of property which should have been listed, or the valuations of that returned, was by appeal to the district court. No other remedy is provided, and being a special proceeding, the remedy prescribed was the only one that could be followed. Consequently, it follows, as of course, that the county court was without authority to enter an order which would permit petitioner to investigate alleged under-valuations and omissions in any other manner than the method prescribed by the statute. *Belcher's Estate, supra; Estate of Moneypenny, supra.*

For the purposes of this case it may be conceded that for ambiguity and uncertainties, the county court had authority to direct that the report be corrected in these respects, and that by virtue of the statute, the appraiser could have been required to report such facts relating to the estate, not incorporated in his report or otherwise returned, as the county court specifically directed, and had authority to direct; and on failure of the appraiser to comply with such order or orders, the court could remove him. It may also be conceded that for fraud or collusion on the part of the appraiser, the court possessed the inherent authority to remove him; but none of these features or that of insubordination, were presented, and the court was, therefore, without authority to enter an order removing the appraiser and appointing another, the effect of which was to permit the petitioner by a new appraisement, to attempt to correct alleged errors which could only be investigated by an appeal to the district court. That was the only remedy which the statute provides under the facts of this case; hence, it appears that the county court acted in excess of its authority, when it removed Judge Hallett and appointed Mr. Chamberlain. This conclusion is fully supported by the cases above cited,

wherein statutes for all practical purposes the same as ours, were involved.

It is true, the statute provides that the county judge "shall appoint some competent person as appraiser as often as, or whenever occasion may require;" but this authority cannot be exercised in such manner, and under circumstances, the effect of which is to undertake to correct alleged omissions and under-valuations, which, according to the plain intent of the statute, can only be inquired into and corrected by appeal. The part of the statute last quoted, and upon which the majority opinion appears to be based, was intended to authorize the appointment of a second, or other, appraiser under circumstances entirely different from those presented here.

The judgment of the district court should be affirmed.